IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK DISMORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-437-SLR |
| | ) |
| SEAFORD SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |

Frank Dismore, Seaford, Delaware, pro se Plaintiff.

Jennifer M. Becnel-Guzzo, Esquire, Buchanan Ingersoll & Rooney PC. Counsel for Seaford School District.

**MEMORANDUM OPINION**

Dated: January لو , 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On July 19, 2006, Frank Dismore ("plaintiff"), proceeding pro se, filed suit against the Seaford School District ("defendant" or "school district") alleging discharge, harassment, and retaliation due to mental disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. Presently before the court is defendant's motion for summary judgment and plaintiff's response thereto. (D.I. 24, 25, 26, 27) For the reasons set forth below, the court will grant the motion for summary judgment.

## II. BACKGROUND

Plaintiff was hired in August 2003 by John and Blanche Gundry ("the Gundrys"), who contracted with defendant to provide bus service for students in the school district. (D.I. 25 at 3) At the time of his hire, plaintiff did not tell the Gundrys or defendant that he believed he suffered from a disability. (D.I. 25, ex. B at 33) Plaintiff was discharged from his employment on September 30, 2005.

Plaintiff attended high school in Pennsylvania and took some college classes following high school. (Id. at 13, 15) At the time of his deposition, plaintiff was living with his parents, working part-time at a package store, and attending a college work study program at Delaware Technical & Community College ("Delaware Tech.") (D.I. 25, ex. B at 5-6, 9-10) Prior to his employment at the package store, plaintiff worked as a truck driver delivering produce to the beaches, and as a package handler for FedEx. (Id. at 11, 13) Plaintiff has lived alone in the past. (Id. at 6)

Plaintiff underwent a psychological examination by Adolph Angemeier ("Dr.

Angemeier"), clinical psychologist, in late December 2002/early January 2003 to determine his intellectual/academic achievement functional levels, as well as his emotional/mental status and potential vocational interests. (D.I. 25, ex. E) Dr. Angemeier observed that functionally, plaintiff's depression elevation was most significant, as far as causing significant potential barriers and impairment to thinking and reasoning. He opined that, with the exception of depression, no specific pathology emerged. He determined that plaintiff has ADD (i.e., attention deficit disorder) which most likely is of the "inattentive type." (Id.) Dr. Angemeier concluded that intellectually, plaintiff has the ability to do just about anything, with the emphasis being a career or a job where writing and reading are not the major issues. (Id.)

Plaintiff characterized his disability as "learning challenged." (D.I. 25, ex. B at 16) He explained that he is mentally challenged and that his comprehension is not normal. (Id.) Plaintiff testified that he has ADD, sought medical treatment, and has taken medication for it since 2005. (Id. at 5, 19) He also has depression. (Id. at 24) He first treatment from a mental health professional began in 2004. (Id.)

When asked what major life activity was affected by his disability, plaintiff responded, "I'm missing something but I don't know what I'm missing so I really can't tell you what I'm missing because I never had it to begin with." (Id. at 16) He testified that it is difficult for him to comprehend things and gave as an example that he took algebra four times before he passed. (Id. at 8) He is given additional test-taking time at Delaware Tech. (Id. at 86) His disability does not affect his ability to get along or interact with others. (Id. at 19) Plaintiff testified that he makes spontaneous statements due to his disability, but acknowledged that no one has told him that his spontaneous

2

statements are connected to his disability. (Id. at 24, 28)

Plaintiff testified that defendant knew about his tendency to make spontaneous statements because in 1964 the school district sent plaintiff to a psychologist and he has "paperwork that says they [sic] instigated this investigation . . . ." (Id. at 33) Plaintiff was eight at the time. (Id.) When plaintiff was hired in 2003, he did not tell defendant that he had a tendency to make spontaneous statements. (Id.) Plaintiff completed a Delaware school bus driver physical examination form dated September 9, 2004, and checked "no" in response to a question asking whether he had a nervous or psychiatric disorder, e.g. severe depression. (D.I. 25, ex. B at 71, ex. H)

Two incidents led to plaintiff's termination: he offered condoms to female students, and he sent text messages to a female student. Plaintiff testified that, during a two week period, girls riding his bus had increasingly sexually explicit conversations and he ultimately asked the girls if they needed condoms. (Id. at 39-40) The two girls, ages 14 or 15, were alone on the bus when plaintiff offered them the condoms. (Id. at 40-41) At the time plaintiff was 49 or 50. (Id. at 41) Plaintiff testified this is an example of spontaneous statements that he makes. (Id. at 42) The incident was reported and plaintiff was advised that his actions were inappropriate by L. J. Saltarelli ("Saltarelli"), the transportation supervisor for the school district. (Id. at 45)

Later, on a separate occasion, plaintiff sent several text messages during one day to a middle school female student who was 14 or 15. (D.I. 25, ex. B at 46, ex. C) Plaintiff did not recall whether he asked the student if she wanted his telephone number or whether she asked for his number. (D.I. 25, ex. B at 47) The student stated that plaintiff asked for her cell phone number. (D.I. 25, ex. C) Plaintiff explained that he text

3

messaged the student because he was trying to learn how to text. (D.I. 25, ex. B at 50)
Plaintiff, however, denied having text messaged the student when he was confronted by
Saltarelli. (Id. at 53) Plaintiff was terminated on September 30, 2005 for misconduct.
(D.I. 25, ex. I) Plaintiff testified that he has not been terminated from any other job
because he made spontaneous statements. (D.I. 25, ex. B at 26-28)

Plaintiff testified that he was subjected to retaliatory threats following his
termination. (Id. at 73) He was contacted by a contractor during December 2005 and
asked if he was interested in working for him. In turn, plaintiff contacted the Gundrys
and asked if he could return to work for them. Plaintiff testified that the Gundrys told
him that Saltarelli indicated that plaintiff would be removed physically, by force if
necessary, if he was seen driving a school bus for the school district. (Id. at 74)
Plaintiff alleges this occurred during the EEOC appeal process.

When asked about harassment, plaintiff testified that he was subjected to verbal
harassment but could not recall who harassed him or whether the harassment was by
someone in the school district. (Id. at 77) He did not report the alleged harassment to
anyone. (Id.)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact and that the moving party is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears
the burden of proving that no genuine issue of material fact exists. See Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that

4

could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from
which a rational person could conclude that the position of the person with the burden of
proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co.,
57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has
demonstrated an absence of material fact, the nonmoving party then "must come
forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita,
475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts
and all reasonable inferences therefrom in the light most favorable to the party opposing
the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

The mere existence of some evidence in support of the nonmoving party,
however, will not be sufficient for denial of a motion for summary judgment; there must
be enough evidence to enable a jury reasonably to find for the nonmoving party on that
issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the
nonmoving party fails to make a sufficient showing on an essential element of its case
with respect to which it has the burden of proof, the moving party is entitled to judgment
as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). With
respect to summary judgment in discrimination cases, the court's role is "to determine
whether, upon reviewing all the facts and inferences to be drawn therefrom in the light
most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue
of material fact as to whether the employer intentionally discriminated against the
plaintiff. Revis v. Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del.1993) (quoting
Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987)).

Defendant moves for summary judgment on the bases that plaintiff has failed to

5

establish the elements of a prima facie case of discrimination, defendant's reasons for terminating plaintiff were legitimate, appropriate and non-discriminatory, and plaintiff has failed to produce any evidence supporting his retaliation and hostile work environment claims. Plaintiff responds by countering exhibits submitted by defendants. (D.I. 26) In opposition to defendant's exhibit D, plaintiff contends that he shows inappropriate behavior in social settings, had repeated episodes of deterioration, and was terminated without recourse; in response to defendant's exhibit F, plaintiff contends that he was born with his disability; and in response to defendant's exhibit G, plaintiff contends that his actions were made within the boundaries of his job.

## IV. DISCUSSION

In order to establish a claim under the ADA, a plaintiff must first establish that he or she "(1) has a 'disability' (2) is a 'qualified individual' and (3) has suffered an adverse employment decision because of that disability." Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998) (en banc) (citing Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998)). If a plaintiff meets this initial burden, the court must then determine whether the plaintiff has put forth direct or circumstantial evidence of discrimination. If the plaintiff has put forth direct evidence of discrimination, the court uses a "mixed motive" theory, meaning that "a plaintiff need only show that the unlawful motive was a 'substantial motivating factor' in the adverse employment action." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003) (citations omitted). If, however, the plaintiff has put forth circumstantial evidence of discrimination, the court uses a pretext theory, which incorporates the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Lawrence v. National Westminster Bank N.J., 98

6

F.3d 61, 68 (3d Cir. 1996) ( in ADA cases, courts are to apply the Title VII burden-shifting rules).

Under the McDonnell Douglas burden-shifting analysis, once the plaintiff has established a prima facie case of discrimination, the burden of production switches to the defendant, who must "articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. McDonnell Douglas, 411 U.S. at 802. If the defendant produces sufficient reasons for its actions, the burden switches back to the plaintiff to demonstrate that the defendant's reasons are merely a pretext for discrimination. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). To defeat a motion for summary judgment under this framework, plaintiff must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764.

The ADA defines "the term 'disability' . . . , with respect to an individual," as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff claims that he is disabled under the ADA because he has a mental impairment, has a record of impairment, or is regarded by defendant as having a mental impairment. Id. at §§ 12102(2)(A), (B), (C). More specifically he contends that he has ADD, a learning disability, and suffers from depression.

## A. Mental Impairment

In pertinent part, the Code of Federal Regulations defines "mental impairment"

7

as: "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). A mental impairment "substantially limits" a "major life activity" (which includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," id. § 1630.2(i)), if it renders someone "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 762 (3d Cir. 2004)(quoting 29 C.F.R. § 1630.2(j)(1)).

The Code of Federal Regulations dictates that several factors "should be considered in determining whether an individual is substantially limited in a major life activity," namely: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. § 1630.2(j)(2). Defendant disputes that plaintiff suffers from a mental impairment but, for the purposes of this motion only and because the facts are viewed in the light most favorable to plaintiff, accepts plaintiff's assertion that he suffers from a mental impairment. (D.I. 25 n.6)

Plaintiff testified that he has difficulty in comprehension, yet the record reflects that he currently takes college classes and has successfully completed a number of

8

classes. As reported by Dr. Angermeier, intellectually plaintiff has the ability to do just about anything, with emphasis in a career or job where writing and reading are not the major issues. Plaintiff has held numerous jobs in the past and continues to be employed. Plaintiff now lives with his parents, but in the past has lived on his own. He testified that his mental disability does not affect his ability to interact or get along with others. Plaintiff testified that he makes spontaneous statements due to his disability, but no one has told him that his spontaneous statements are connected to his disability.

Even if plaintiff's mental impairment, which includes his learning disability (ADD) and depression, could be characterized as moderate, nonetheless, "[h]ealth conditions that cause moderate limitations on major life activities do not constitute disabilities under the ADA. To hold otherwise could expand the ADA to recognize almost every working American as disabled to some degree." Collins v. Prudential Inv. and Ret. Services, 119 Fed. Appx. 371 (3d Cir. 2005) (quoting Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 724 (8th Cir. 2002)). Upon reviewing the evidence of record, the court finds that plaintiff's mental impairment does not "substantially limit" his ability to perform major life activities. Because plaintiff has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, defendant is entitled to judgment as a matter of law, see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), and the court will grant its motion for summary judgment with respect to plaintiff's claim of actual disability. Accordingly, in order to prove that he is disabled under the meaning of the ADA, plaintiff must show that he has a record of a mental disability or that defendant regarded him as having such a mental impairment.

9

## B. Record of Impairment

Defendant argues that plaintiff has presented no evidence that a record exists of an alleged disability. Plaintiff responds that at least one of his early childhood records was created by defendant to inform his parents of his "problem" and another record was sent to the principal of Central Elementary School. During his deposition, plaintiff testified that school district records are evidence of his disability.[1]

Having a record of disability means that an individual "has a history of, or has been misclassified as having," a substantially limiting impairment. 29 C.F.R. § 1630.2(k). A plaintiff attempting to prove the existence of a "record" of disability must demonstrate that the recorded impairment is a "disability" within the meaning of the ADA. Tice v. Centre Area Transp. Auth., 247 F.3d 506, 513 (3d Cir. 2001); see also Olson v. General Elec. Astrospace, 101 F.3d 947, 953 (3d Cir. 1996) (plaintiff relying on record of impairment must show that impairment was substantially limiting).

The records upon which plaintiff relies are more than forty years old. Indeed, plaintiff testified that it was in 1964, when he was eight, the school district sent him to a psychologist. There is no evidence before the court that the records were available to defendant at the time it made its decision to terminate plaintiff. Moreover, there is no evidence that the forty year old records demonstrated that the recorded impairment is a "disability" within the meaning of the ADA or that it was substantially limiting. Therefore, the court will grant defendant's motion for summary judgment with respect to plaintiff's claim of a record of disability.

---

[1]The records were not provided to the court.

10

## C. "Regarded as" Impaired

Defendant moves for summary judgment on the basis that there is no evidence that it believed plaintiff had a substantially limiting impairment at the time of plaintiff's termination or at any time during plaintiff's employment. While plaintiff did not make a direct response to this issue, it appears he again relies upon his childhood school records as evidence that defendant regarded him as impaired.

Under the ADA, a person is regarded as impaired when he: "(1) [h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) [h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) [h]as none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l). While it is not contested that plaintiff has an impairment as defined by 29 C.F.R. § 1630.2(h), this court has already determined that such impairment does not substantially limit any of plaintiff's major life activities; therefore, in order to make a successful claim that he is "regarded as" disabled, plaintiff must show that his impairment was "treated by [defendant] as constituting such [a] limitation." Id. § 1630.2(l)(1).

The analysis under this definition focuses not on plaintiff and his actual abilities, "but rather on the reactions and perceptions of the persons interacting or working with him." Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996) (citation omitted). Indeed, "to be covered under the 'regarded as' prong of the ADA [,] the employer must regard the employee to be suffering from an impairment within the meaning of the statutes, not

11

just that the employer believed the employee to be somehow disabled." Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 381 (3d Cir. 2002) (citations and quotations omitted).  To prevail, plaintiff must establish that defendant believed he was limited in his ability to work in "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999)(quoting 29 C.F.R. § 1630.2(j)(3)(i)).  Therefore, "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." See Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999).

Reviewing the record in the light most favorable to plaintiff, the evidence is insufficient to show that defendant regarded him "as precluded from more than a particular job."  At the time of his hire, plaintiff did not tell the Gundrys or defendant that he believed he suffered from a disability.  Plaintiff never told defendant that he had a tendency to make spontaneous statements.  Plaintiff checked "no" on a Delaware school bus driver physical examination form in response to a question asking whether he had a nervous or psychiatric disorder, e.g. severe depression.  Also, plaintiff never asked or made defendant aware of a possible need for an accommodation, although he testified this was so because they had instigated a psychiatric investigation forty years earlier.  (D.I. 25, ex. B at 68).  Plaintiff fails to create a material issue of fact that he was "regarded as" disabled by defendant.  Accordingly, based upon the foregoing, the court will grant defendant's motion for summary judgment with respect to plaintiff's claim of being regarded as disabled.

12

## D. Retaliation

The complaint alleges that retaliatory threats were made against plaintiff through third parties. Defendant moves for summary judgment on the basis that plaintiff cannot establish a prima facie case of retaliation.

To state a prima facie case of retaliation under the ADA "'a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's action." Fogleman v. Mercy Hosp., 283 F.3d 561, 567-68 (3d Cir. 2002) (quoting Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)).

The only protected activity in which plaintiff engaged occurred after he was terminated, when he filed his complaint with the EEOC. Plaintiff's retaliation claim may stem from statements allegedly made by Saltarelli after plaintiff asked the Gundrys in December 2005 if he could return to work. Plaintiff testified that the Gundrys told him that Saltarelli indicated that plaintiff would be removed physically, by force if necessary, if he was seen driving a school bus for the school district. In his attempt to rebut defendant's position, plaintiff produced two statements, one from a prospective employer and one from Mr. Gundry. (D.I. 26, exs.) Both gentlemen stated that they spoke to Saltarelli in December 2005 about employing plaintiff as a bus driver. One stated that Saltarelli said plaintiff could not drive, and the other stated that Saltarelli threatened to remove plaintiff from any school district bus. (Id.) Neither statement indicated that Saltarelli threatened to use force to remove plaintiff. (Id.)    The statements do not support a claim for retaliation. Plaintiff had already been terminated

13

at the time the statements were made. Further, the statements produced by plaintiff do not evidence he was threatened by anyone but, rather, are evidence of defendant's position to third parties that plaintiff would not be allowed to drive a bus for the school district. Finally, there is no evidence to causally link Saltarelli's statements to plaintiff's protected activity in filing his EEOC complaint. Accordingly, the court will grant defendant's motion for summary judgment with respect to plaintiff's claim of a record of retaliation.

## E. Harassment

Defendant moves for summary judgment on plaintiff's claim of harassment in the workplace on the basis that plaintiff produced no evidence to support said claim. While not clear, it seems that plaintiff rests his harassment claim on an apparent refusal by defendant to produce discovery. (D.I. 26)

To prove a claim for disability-based harassment, plaintiff must show that: "(1) he is a qualified individual with a disability under the ADA; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and (5) that [his employer] knew or should have known of the harassment and failed to take prompt effective remedial action." Walton v. Mental Health Assoc. of Southeastern Pennsylvania, 168 F.3d 661 (3d Cir. 1999) (assuming without stating that there is a cause of action for disability-based harassment and setting forth the elements).

Plaintiff failed to establish that he is a qualified individual with a disability under the ADA. Further, he provided no specifics regarding the alleged harassment, and he

14

failed to provide any evidence that the defendant knew or should have known of the alleged conduct and failed to take prompt effective remedial action. Indeed, he testified that he never told defendant about any alleged harassment. Therefore, the court will grant the motion for summary judgment with respect to the issue of harassment.

## V. CONCLUSION

Based upon the foregoing analysis, the court will grant defendant's motion for summary judgment. An appropriate order will issue.

15